United States District Court
District of Massachusetts

```
_____
                               )
Machine Project, Inc. and Kinser )
Chiu,                            )
                                 )
        Plaintiffs,              )
                                 )      Civil Action No.
        v.                       )      14-10022-NMG
                                 )
Pan American World Airways, Inc. )
and Anthony Lucas,               )
                                 )
        Defendants.              )
                                 )
_____ )
```

MEMORANDUM & ORDER

GORTON, J.

Machine Project, Inc. ("MPI") and Kinser Chiu ("Chiu") (jointly "plaintiffs") bring claims against Pan American World Airways, Inc. ("Pan Am") and Anthony Lucas ("Lucas") (jointly "defendants") for breach of contract and fraud. Pending before the Court is defendant Pan Am's motion to dismiss for lack of subject matter jurisdiction. For the reasons that follow, the motion will be denied.

I.  **Background**

    **A. Factual Background**

    Plaintiff MPI is a New York corporation with its principal place of business in New York. Co-plaintiff Chiu was President

and 50% owner of MPI.  Defendant Pan Am is a Delaware corporation with its principal place of business in New Hampshire.  Co-defendant Lucas was Secretary and 50% owner of MPI.  Both Chiu and Lucas are residents of New Jersey.

### 1. The Parties' Agreement

In September, 2005, Pan Am and Machine Ltd. (the predecessor in interest to MPI) entered into a Merchandising License Agreement ("the 2005 MLA") which, _inter alia_, granted Machine Ltd. the right to authorize others to use Pan Am's trademarks in certain territories.  Lucas, who at that time was President of Machine Ltd., signed the 2005 MLA on behalf of Machine Ltd.

Plaintiffs allege that shortly after the signing of the 2005 MLA, Lucas approached Chiu to seek his assistance in reviving and developing the Pan Am brand, and that in April, 2006, Lucas and Chiu formed a joint venture whereby Chiu agreed to "help" in the development of the Pan Am brand in exchange for a 50% ownership stake in Machine Ltd.  Lucas and Chiu later formed MPI as the new corporate entity through which they intended to carry out their joint venture.

In April, 2007, Pan Am and MPI entered into a new Merchandising License Agreement ("the 2007 MLA") which is at

issue in the instant action.  The 2007 MLA, which Chiu and Lucas executed on behalf of MPI, provided MPI with, inter alia, the

> exclusive, sublicensible right...to use [Pan Am's trademarks] in the Territory on Merchandising Products and in connection with the sale, distribution, advertising and promotion of Merchandising Products in the Territory.

The 2007 MLA also established annual gross revenue requirements for MPI to reach, and provided that, in the event MPI failed to meet such requirements, Pan Am would have the option to collect from MPI the royalty that would have been due from MPI if the requirements for such "Royalty Year" had been satisfied, or to terminate the agreement upon 30 days prior written notice to MPI.

The 2007 MLA further provided that it could be terminated by either party upon 30 days written notice in the event that a breach of a material provision were not cured during that 30-day notice period.  Finally, the 2007 MLA contained a forum selection clause which provided that:

> All disputes under this Agreement shall be resolved by the courts located in the State of Massachusetts in Boston, Massachusetts, including the United States District Court for the District of Massachusetts and each of the parties consents to the jurisdiction of such courts, agrees to accept service of process by mail and hereby waives any jurisdiction or venue defenses otherwise available to it.

Plaintiffs allege that following the execution of the 2007 MLA:

-3-

1) Chiu invested significant time and capital into developing the Pan Am brand but that it became known to him that a third party had registered Pan Am trademarks and was selling Pan Am branded products in Japan (a region which plaintiffs purport fell within the "Territory" specified in the 2007 MLA);

2) such third party activity prevented MPI from entering the Japanese market;

3) the "trademark problem" was known to Lucas and Pan Am but they did not inform Chiu about the problem and Chiu continued to finance the MPI venture; and

4) without being able to enter the Japanese market, MPI's sales dropped and defendants began discussing the possibility of ousting Chiu.

By the fall of 2007, Pan Am was ostensibly dissatisfied with the progress of the branding program and allegedly took actions in concert with Lucas to "oust Chiu and deprive him of the fruits of the 2007 MLA." Specifically, plaintiffs allege that Lucas made misrepresentations that Chiu would be willing to sell his interest in MPI and, in early 2008, retroactively filled out and backdated corporate forms to indicate that Lucas was MPI's sole shareholder.

In March, 2008, Pan Am sent a Notice of Termination of the 2007 MLA to Lucas and took the position that it was entitled to do so because, <u>inter alia</u>, the minimum gross revenue requirements set forth in the 2007 MLA had not been met. Plaintiffs allege that Chiu's requests to Pan Am to provide him a copy of the Notice of Termination were denied, and that Pan Am

-4-

claimed it did not need to provide such notice because Chiu did not have a proprietary interest in MPI.  By August, 2008, Pan Am had allegedly hired Lucas as its "Head of Marketing" and his wife as a "merchandising and design manager" to accomplish precisely what MPI was contracted to do under the 2007 MLA.

### 2.  The 2008 State Court Action

In May, 2008, Chiu and MPI commenced an action in the Supreme Court of the State of New York for New York County against Lucas and Pan Am for breach of the 2007 MLA, wrongful termination of the 2007 MLA and injunctive relief.  Pan Am and Lucas removed the case to the United States District Court for the Southern District of New York but it was later remanded to state court for lack of diversity jurisdiction in that Chiu and Lucas were both residents of New Jersey.  Pan Am subsequently moved to dismiss the complaint on the grounds that the action had to be litigated in the courts of Boston, Massachusetts in accordance with the forum selection clause of the 2007 MLA.

### 3.  The 2008 Federal Action

In June, 2008, Pan Am brought an action against Chiu and Chiu's company Vetements, Inc. ("Vetements") in the United States District Court for the Southern District of New York ("the 2008 action"), alleging that Chiu and Vetements infringed Pan Am's trademarks by continuing to sell Pan Am-branded

-5-

products after Pan Am announced its termination of the 2007 MLA. In November, 2009, Chiu and Vetements filed a motion to dismiss that action for failure to name MPI and Lucas as parties.  In so moving, Chiu and Vetements argued that in order for Pan Am to prevail on its claim that Pan Am's trademark rights were infringed, it must first establish that the 2007 MLA was rightfully terminated, and that such a determination could not be made without MPI and Lucas in the lawsuit.  In September, 2010, the court found that Lucas and MPI were necessary parties and ordered that they be joined to the 2008 action.

In November, 2010, Chiu, Vetements, and MPI asserted counterclaims alleging that Pan Am and Lucas were part of an unlawful scheme to defraud Chiu with respect to the geographic scope of the 2007 MLA.  In April, 2012, the court permanently enjoined Vetements from manufacturing or selling goods bearing any trademarks owned by Pan Am and dismissed all counterclaims against Pan Am on improper forum grounds (citing the 2007 MLA's forum selection clause) and for lack of standing.

### B. Procedural History

Plaintiffs brought this action in January, 2014.  Their complaint contains five counts:  Count I alleges Pan Am breached its contract with MPI by failing to provide 1) an opportunity to cure as provided in the 2007 MLA, 2) a full "Royalty Year" to

-6-

meet the minimum revenue requirement and 3) a statement of
reasons for why it was terminating the contract.  Count II
alleges Pan Am breached the covenant of good faith and fair
dealing with plaintiffs by engaging in the conduct described in
Count I, failing to deliver on a promise that Japan would be
covered within the geographic area of the license and taking the
position that Chiu had no ownership stake in MPI.  Count III
alleges fraud against Pan Am and Lucas for their intentional or
reckless misrepresentations to Chiu and MPI that Pan Am
possessed exclusive rights to market and sell its branded
products in Japan and for acting to exclude Chiu from the
venture.  Counts IV and V allege breach of fiduciary duty and
tortious interference with contractual relations, respectively,
against Lucas.

In March, 2014, this Court entered default judgment against
Lucas for failing to appear pursuant to Fed. R. Civ. P. 55(a).

In April, 2016, Pan Am moved to dismiss all claims for lack
of federal subject matter jurisdiction pursuant to Fed. R. Civ.
P. 12(b)(1), on the grounds that 1) the shared New Jersey
citizenship of plaintiff Chiu and defendant Lucas destroys the
complete diversity requirement under 28 U.S.C. § 1332(a)(1) and
2) the doctrine of judicial estoppel bars plaintiffs from
attempting to cure that jurisdictional defect by voluntarily

-7-

dismissing defendant Lucas.  MPI filed a notice of voluntary

dismissal of defendant Lucas that same day.

II.  **Analysis**

    A.  **Subject Matter Jurisdiction**

        1.  **The Legal Standard**

Federal district courts have limited subject matter

jurisdiction and must be authorized by Congress to hear a case.

See Gonzalex-Cancel v. Progresista, 696 F.3d 115, 119 (1st Cir.

2012).  Plaintiffs submit that this Court has jurisdiction over

the instant action pursuant to 28 U.S.C. § 1332 which provides

federal district courts with jurisdiction over civil suits

between diverse parties where the amount in controversy exceeds

$75,000 (i.e. "diversity jurisdiction").

To maintain an action in federal court based upon diversity

jurisdiction, there must be complete diversity, meaning that no

plaintiff can be a citizen of the same state as any of the

defendants. See 28 U.S.C. § 1332(a)(1); Lefkowitz v. Lider, 443

F. Supp. 352, 355 (D. Mass. 1978).  The plaintiff always bears

the burden to prove the existence of federal subject matter

jurisdiction, a challenge to which may be raised at any point

during the litigation pursuant to Fed. R. Civ. P. 12(b)(1). See

Aversa v. United States, 99. F.3d 1200, 1209 (1st Cir. 1996);

Progressive Consumer Fed. Credit Union v. United States, 79 F.3d
1228, 1230 (1st Cir. 1996).

### 2. Application

Here, plaintiffs' complaint alleges that Lucas is a citizen
of New Jersey, and although such jurisdictional averments are
entitled to no presumptive weight, the Court has no reason to
doubt this jurisdictionally significant fact, and accepts its
veracity. See Valentin v. Hospital Bella Vista, 254 F.3d 358,
363 (1st Cir. 2001).  Next, while the complaint is silent as to
Chiu's state of residence, the Court enjoys broad authority to
consider extrinsic evidence in order to determine its own
jurisdiction in the face of a jurisdictional challenge. See id.
Here, such evidence is readily available:  the transcript of
Chiu's January 28, 2016 deposition unequivocally supports the
assertion that Chiu is domiciled in Fort Lee, New Jersey.
Further, there is nothing in the record to indicate that Chiu
resided anywhere other than Fort Lee, New Jersey at the time the
action was brought.

Accordingly, because Chiu and Lucas are both citizens of
the State of New Jersey, the requirement of complete diversity
of citizenship as prescribed by 28 U.S.C. 1332(a)(1) has not
been met.  The Court proceeds therefore to consider whether that

-9-

shortcoming is fatal to plaintiffs' ability to maintain this action in federal court.

**B. Judicial Estoppel**

Having recognized that complete diversity of citizenship is lacking, the question remains whether plaintiffs may cure this jurisdictional defect by voluntarily dismissing defendant Lucas.

Federal jurisdictional defects arising out of shared citizenship between opposing litigants can generally be cured by dismissal of either of the non-diverse parties. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 572 (2004). Here, plaintiffs move voluntarily to dismiss defendant Lucas, yet defendant Pan Am contends that Lucas may not be voluntarily dismissed because he is a "necessary party" as prescribed by Fed. R. Civ. P. 19(a) and because the doctrine of judicial estoppel prevents plaintiffs from arguing otherwise.

Specifically, Pan Am points to the 2008 action brought by Pan Am against Chiu and Vetements in the United States District Court for the Southern District of New York, wherein Chiu moved to compel joinder of Lucas and MPI as necessary parties pursuant to Fed. R. Civ. P. 19(a). In so moving, Chiu argued that 1) in order for Pan Am to prevail on its claim of trademark infringement, it must first establish that the 2007 MLA had not been properly terminated and 2) such determination could not be

made without MPI and Lucas in the lawsuit.  The Court agreed,
reasoning that MPI and Lucas were "too closely intertwined" in
the issues raised by Pan Am's claims for the case to move
forward without them, and ordered both MPI and Lucas to be
joined. See Pan America World Airways, Inc. v. Vetements, Inc.
No. 08 Civ. 5480 (RJH), 2010 WL 3632732, at *7 (S.D.N.Y. Sept.
16, 2010).

### 1.  The Legal Standard

The doctrine of judicial estoppel serves to preclude a
party from asserting a position in one legal proceeding which is
contrary to a position it has already asserted in another.
Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212
(1st Cir. 1987).  The purpose of the doctrine is to safeguard
the "integrity of the judicial process" by barring litigants
from altering their positions "according to the exigencies of
the moment." See New Hampshire v. Maine, 532 U.S. 742, 743
(2001).  The doctrine is flexible and the specific circumstances
under which it may be invoked are incapable of being reduced to
a consistent, mechanical formulation, yet courts generally
require the presence of three factors:

> First, a party's earlier and later positions must be
> clearly inconsistent.  Second, the party must have
> succeeded in persuading a court to accept the earlier
> position.  Third, the party seeking to assert the

inconsistent position must stand to derive an unfair
advantage if the new position is accepted by the court.

See id. at 743; see also Perry v. Blum, 629 F.3d 1, 8-9 (1st
Cir. 2010) (internal citations omitted).  Simply put, judicial
estoppel applies when a party has adopted one position, secured
a favorable decision, and then embraces a contradictory position
in search of a legal advantage. Alternative Sys. Concepts, Inc.
v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2005).  As a matter
of policy, the doctrine is equitable in nature and is typically
invoked when it appears that a litigant is trying to "play fast
and loose with the courts." Perry, 629 F.2d at 8.

### 2. Application

The parties do not contest that the court in the 2008
action accepted Chiu's position that Lucas was a necessary party
to that lawsuit.  Accordingly, the "second factor" of the
judicial estoppel analysis need not be discussed here. See id.
at 9.  The critical inquiry surrounds the existence (or lack
thereof) of the first and third factors (i.e. whether Chiu's
current position is clearly inconsistent with his position in
the 2008 action, and whether Chiu stands to derive an unfair
advantage if his new position is accepted by the court). See
id.

### a. Inconsistent Positions

Pan Am contends that Chiu's current position, that Lucas is not a necessary party, is clearly inconsistent with Chiu's successful motion to join Lucas to the 2008 action.  In that case Chiu reasoned that allowing the court to determine whether the 2007 MLA was rightfully terminated in Lucas's absence would impair his ability to protect his interests under the contract.

Plaintiffs respond that Pan Am's attempted invocation of judicial estoppel is inapposite because the claims at issue in the instant case are "sufficiently dissimilar" to the claims underlying the 2008 action such that Chiu's respective positions in the two cases are not inconsistent.  Specifically, plaintiffs submit that while Pan Am's 2008 trademark infringement action hinged on a showing of whether the 2007 MLA was rightfully or wrongfully terminated, their ability to succeed on their claims in the instant case requires no such showing.  Consequently, plaintiffs' aver, their "position" that Lucas is not a necessary party to this case is not inconsistent with Chiu's contention that Lucas was a necessary party to the 2008 action.

The Court disagrees.  In the 2008 action, Chiu argued that Lucas was a necessary party because Pan Am's trademark infringement claims required a determination of whether the 2007 MLA was rightfully terminated and that such a determination

could not be made without Lucas present in the lawsuit.  Despite
Chiu's contention to the contrary, resolution of the claims at
issue here requires this Court to make that same determination.
For example, a finding that Pan Am breached the 2007 MLA for
failing to provide the full "Royalty Year" would tacitly
necessitate a finding that Pan Am's termination of the contract
was indeed wrongful.  Accordingly, because the claims at issue
here, just as were the issues underlying the 2008 action, hinge
on a showing of whether the 2007 MLA was properly terminated,
Chiu's position that Lucas is not a necessary party to the
instant case is inconsistent with his contrary position in the
2008 action.

        Based on the facts recounted above, the Court finds the
first element needed for the invocation of judicial estoppel is
satisfied.  Furthermore, it is uncontested that the court in the
2008 action accepted Chiu's earlier position and thus the
doctrine's second requisite element is satisfied.  The third
element is problematic.

### b.  Unfair Advantage

        Inconsistency between past and present positions has never
been the solitary touchstone of judicial estoppel.  Here,
despite the fact that Chiu's current and past positions are
inconsistent, this case is a "poor candidate for judicial

estoppel" because plaintiffs do not stand to gain an "unfair advantage" if allowed to pursue voluntary dismissal of defendant Lucas. See InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003).  Thus, the third judicial estoppel factor is missing. See id.  This Court recognizes that the First Circuit Court of Appeals has not always required a showing of unfair advantage in order for judicial estoppel to be properly invoked, yet it is well settled that judicial estoppel is an equitable, discretionary doctrine, and here, the Court finds that the factual and procedural circumstances surrounding this lawsuit weigh in favor of rejecting the doctrine's invocation.  See New Hampshire, 532 U.S. at 750 (internal citations omitted); Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012) (internal citations omitted).

Plaintiffs' effort voluntarily to dismiss defendant Lucas simply does not cause this Court to be concerned that they are attempting to "play fast and loose with the courts." See Patriot Cinemas, 834 F.2d at 212.  The current action marks Chiu's third attempt to adjudicate his breach of contract claims against Pan Am and plaintiffs' voluntary dismissal of defendant Lucas in this case evinces nothing more than Chiu's desire to have his day in court.  This is not a situation where a party has "adopted one position, secured a favorable decision, and

-15-

then taken a contradictory position in search of a legal advantage." See InterGen, 344 F.3d at 144.  Indeed, Chiu was ultimately unsuccessful in both of his past attempts to have his claims against Pan Am heard.

Notable also is the fact that were the Court to bar plaintiffs from voluntarily dismissing defendant Lucas and thus dismiss the case for want of subject matter jurisdiction, plaintiffs' options for legal redress would be exhausted because the applicable statute of limitations in Massachusetts state court has already run. See M.G.L. c. 20, §2.

Pan Am significantly makes no argument that Chiu stands to derive an unfair advantage if the voluntary dismissal of Lucas is allowed.  It has failed to convince the Court that Chiu has employed "intentional self-contradiction" as a means of obtaining an unfair legal advantage. See Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999).  Chiu's apparent inconsistency is neither patently unfair to Pan Am nor an affront to the integrity of the judicial system. See id.

While the Court acknowledges the inconsistency between Chiu's past and present positions, as is further elaborated below, the circumstances relevant to Lucas's interest in this dispute have undergone significant development since the 2008

-16-

action such that his presence in the instant case is not required.

## C. Necessary and Indispensable Parties

Having decided not to invoke judicial estoppel, the only issue left before the Court is whether defendant Lucas is otherwise a necessary and indispensable party.  For the reasons already stated and for those further elaborated below, the Court finds that he is not.

### 1.  The Legal Standard

Fed. R. Civ. P. 19 instructs courts to engage in a two-part analysis to determine whether a party is necessary and indispensable.  See Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989).  First, courts must determine whether the absent party (or, in this case, the party whose proposed absence is contemplated) fits the criterion laid out in Fed. R. Civ. P. 19(a), which states that a party is necessary if, inter alia, in that party's absence complete relief cannot be accorded, or that party claims an interest related to the subject of the action such that adjudication in their absence would either impair their ability to protect that interest or leave an existing party subject to inconsistent obligations. See Fed. R. Civ. P. 19(a)(1).

-17-

If the court determines that the party fits the criteria set out in Fed. R. Civ. P. 19(a) and thus is "necessary", but that said necessary party cannot feasibly be joined, the court must proceed to the second step.  It must determine whether the action can proceed among the other parties or, if the party is "indispensable," be dismissed. See Fed. R. Civ. P. 19(b); Pujol, 877 F.2d at 134.

### 2. Application

#### a. Lucas is not a necessary party

By applying piecemeal the criteria set forth in Fed. R. Civ. P 19(a) the Court finds that Lucas is not a necessary party.  First, there is nothing to suggest that the Court would be unable to afford complete relief in Lucas's absence.  In Count I of the complaint, MPI alleges breach of contract against Pan Am, and in Count II, plaintiffs (MPI and Chiu) jointly allege breach of covenant of good faith and fair dealing against Pan Am.  Neither Count I nor Count II is directed at defendant Lucas, and because Lucas himself is not a party to the 2007 MLA (MPI and Pan Am are the only parties to that contract) this Court could indeed afford complete relief in Lucas's absence. Further, in Count III of the complaint plaintiffs assert fraud against both Pan Am and Lucas, yet it is well settled law that joint tortfeasors are not necessary parties (because a plaintiff

-18-

may fully recover from a single tortfeasor who is then free to seek contribution from the other). See <u>Temple v. Synthes Corp., Ltd.</u>, 498 U.S. 5, 7 (1990).

Second, the Court agrees with plaintiffs' contention that Lucas's failure to respond in the instant case, coupled with the fact that he did not assert any affirmative claims in the 2008 action, suggest that he claims no interest in the subject matter of this litigation and accentuates the unlikelihood that proceeding in his absence would "impair or impede" his ability to protect his interest or subject the remaining parties to the potential for multiple inconsistent judgments. See Fed. R. Civ. P. 19(a).  While Lucas could theoretically assert claims against MPI, Chiu, or Pan Am at some point in the future, that does not make Lucas a necessary party as prescribed by Fed. R. Civ. P. 19(a).

**b.  Lucas is not an indispensable party**

Because the Court finds that Lucas is not a necessary party under Fed. R. Civ. P. 19(a), it declines to consider whether Lucas is "indispensable" under Fed. R. Civ. P. 19(b).  Indeed, the analysis solicited by Fed. R. Civ. P. 19(b) need only be reached if the party whose joinder is contemplated meets the requirements of Fed. R. Civ. P. 19(a), and Lucas does not.

Accordingly, because Lucas is not a "necessary and indispensable" party under the strictures of Fed. R. Civ. P. 19, the Court will allow him to be dismissed.

### ORDER

For the foregoing reasons, defendant Anthony Lucas is terminated pursuant to plaintiffs' notice of voluntary dismissal (Docket No. 83) and defendant's motion to dismiss for lack of subject matter jurisdiction (Docket No. 84) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 28, 2016