United States District Court
District of Massachusetts

```
                           )
Machine Project, Inc. and Kinser )
Chiu,                      )
                           )
          Plaintiffs,      )
                           )
          v.               )        Civil Action No.
                           )        14-10022-NMG
Pan American World Airways, )
Inc.,                      )
                           )
          Defendant.       )
                           )
```

MEMORANDUM & ORDER

GORTON, J.

This case arises from a dispute over a licensing agreement between plaintiff Machine Project, Inc. ("MPI") and co-plaintiff Kinser Chiu, its former president, and defendant Pan American World Airways, Inc. ("Pan Am"). Plaintiffs generally allege that defendant breached that license agreement and committed fraud. Pending before this Court is defendant's motion for summary judgment on all claims. For the reasons that follow, defendant's motion will be allowed, in part, and denied as moot, in part.

I.   **Background**

In April, 2007, Pan Am and MPI entered into a Merchandising License Agreement ("the 2007 MLA" or "Agreement") which is at issue in the instant action. At that time, Chiu and his

-1-

colleague, Anthony Lucas, were each 50% stockholders in MPI and
they both executed the Agreement on its behalf.  The Agreement
granted MPI the

> exclusive, sublicensible right...to use [Pan Am's
> trademarks] in the Territory on Merchandising Products
> and in connection with the sale, distribution,
> advertising and promotion of Merchandising Products in
> the Territory.

The 2007 MLA also established annual gross revenue
requirements for MPI.  In the event MPI failed to generate the
required revenue, Pan Am had the option to collect from MPI the
royalty that would have been due from MPI if the requirements
for such "Royalty Year" had been satisfied or to terminate the
Agreement upon 30 days prior written notice.  The Agreement
further provided for termination by either party upon 30 days
written notice in the event that a breach of a material
provision was not cured within the 30-day notice period.

In the fall of 2007, Pan Am ostensibly became dissatisfied
with the progress of the branding program.  Several months
later, Pan Am sent a Notice of Termination of the 2007 MLA to
MPI and took the position that it was entitled to do so because,
among other reasons, the minimum gross revenue requirements set
forth in the 2007 MLA had not been met.  In or about August,
2008, Pan Am hired Lucas as its "Head of Marketing" and his wife
as a "merchandising and design manager," intending to accomplish
what the Agreement was supposed to do.

**A.    The 2008 State Court Action**

In May, 2008, Chiu and MPI brought suit against Lucas and Pan Am in a New York state trial court for breach of the 2007 MLA, wrongful termination of the 2007 MLA and injunctive relief. Pan Am and Lucas removed the case to the United States District Court for the Southern District of New York but it was later remanded to the state court for lack of diversity jurisdiction because Chiu and Lucas were both residents of New Jersey.  Pan Am successfully moved to dismiss the complaint in that action on the grounds that the dispute had to be litigated in Boston, Massachusetts in accordance with the forum selection clause of the 2007 MLA.

**B.    The 2008 Federal Action**

In June, 2008, Pan Am brought an action in the United States District Court for the Southern District of New York against Chiu and a company controlled by Chiu, Vetements, Inc. ("Vetements") ("the 2008 action").  Pan Am alleged that Chiu and Vetements infringed its trademarks by continuing to sell Pan Am-branded products after Pan Am terminated the 2007 MLA.  In November, 2009, Chiu and Vetements filed a motion to dismiss that action for failure to name MPI and Lucas as parties.  In September, 2010, the Court found that Lucas and MPI were "necessary parties" and ordered that they be joined in the action.

Shortly thereafter, Chiu, Vetements and MPI asserted counterclaims alleging that Pan Am and Lucas were part of an unlawful scheme to defraud Chiu with respect to the geographic scope of the 2007 MLA.  In April, 2012, the Court permanently enjoined Vetements from manufacturing or selling goods bearing any trademarks owned by Pan Am and dismissed the counterclaims on improper forum grounds and for lack of standing.

### C.  Procedural History

Plaintiffs brought this action in January, 2014.  Their complaint contains three counts against Pan Am:  breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II) and fraud (Count III).  Counts IV and V allege breach of fiduciary duty and tortious interference with contractual relations, respectively, against Lucas.

In March, 2014, this Court entered default judgment against Lucas for failing to appear pursuant to Fed. R. Civ. P. 55(a). After protracted discovery caused, at least in part, by the necessity of obtaining letters rogatory, and several extensions of deadlines, in April, 2016, Pan Am moved to dismiss all claims for lack of federal subject matter jurisdiction.  MPI filed a notice of voluntary dismissal of its claim against defendant Lucas that same day.  This Court subsequently allowed plaintiffs' dismissal of their claims against Lucas but otherwise denied Pan Am's motion to dismiss.

Now pending before the Court is Pan Am's motion for summary judgment on all claims.

## II.   Defendant's Motion for Summary Judgment

### A.   Chiu's Standing

As a threshold matter, defendant avers that Chiu lacks standing to bring claims for breach of the covenant of good faith and fair dealing (Count II) and fraud (Count III) because there is no evidence that he has been personally injured by the purported conduct.  Chiu responds that he has suffered personal injuries separate from the alleged damages to MPI.

Generally, a stockholder does not have standing to assert a claim on behalf of a business entity in which he owns stock. Laverty v. Massad, 661 F. Supp. 2d 55, 61-62 (D. Mass. 2009). Thus, Chiu lacks standing to bring claims in Counts II and III to enforce the contractual rights of MPI. See Quaglieri v. Steeves, Docket No. 11-10377, 2013 WL 1222220, at *3 (D. Mass. Mar. 26, 2013).  The pleadings and the record are unclear, however, as to what claims are asserted on behalf of the individual and/or corporate plaintiffs so the Court will do its best to differentiate.

### B.   Legal Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

C.   **Application**

   1.   **Count I:   Breach of Contract**

In Count I, MPI alleges defendant breached the 2007 MLA because it:  1) did not provide MPI with a 12-month "Royalty Year" to meet the minimum revenue requirement, 2) did not provide an opportunity for MPI to cure any potential breach and 3) did not give notice to Chiu about the termination of the Agreement.  Defendant generally contends that summary judgment should be allowed with respect to Count I because it complied with all the material terms of the Agreement and was not in breach.

   a.   **"Royalty Year"**

With respect to plaintiff's first contention, the Court agrees with defendant.

Although perhaps a misnomer is used, the 2007 MLA clearly provides that plaintiffs had eight months to meet the minimum sales requirement in the first "Royalty Year."  The 2007 MLA specifically states:

> This Agreement and the provisions hereof, except as otherwise provided herein, shall be in full force and effect commencing on the Effective Date and shall continue through December 31, 2011 . . . .

The Agreement then defines the "Effective Date" as "the 1st day of January, 2007."  Moreover, "Royalty Year" is defined as a "one-year period commencing on January 1 of a given year."

-7-

Those provisions establish that the "Royalty Year" began on January 1, 2007 and that plaintiffs had only until December 31, 2007 to meet the minimum sales requirements.  Although plaintiffs contend that the meaning of the terms are ambiguous, mere disagreement with respect to the meaning of a term is not sufficient to create ambiguity. See Dasey v. Anderson 304 F.3d 148, 158 (1st Cir. 2002) (citing Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 953 (Mass. 1998)).

### b.  Opportunity to cure provisions

Alternatively, plaintiffs submit that defendant did not provide it an opportunity to cure its insufficient sales by paying the royalty that would have been due had it met its performance requirement, in violation of § 4.D of the Agreement. That provision permits a party to terminate the Agreement on 30-days' notice if the other party breaches a "material provision" of the Agreement and does not cure the breach.

Defendant counters by citing § 4.B.ii, which provides that in the event MPI does not meet the minimum performance requirement, defendant may provide the opportunity to cure or terminate the Agreement on 30-days' notice.

The question of whether a contract is ambiguous is a question of law. Nicolaci v. Anapol, 387 F.3dd 21, 26 (1st Cir. 2004).  Moreover, if a contract is unambiguous, its meaning is also a question of law which can be determined on summary

judgment. See Dasey, 304 F.3d at 158 (quoting Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 951 (Mass. 2002)).

Contracts are interpreted as a whole and terms are not construed in isolation. Nicolaci, 387 F.3d at 26.  The 2007 MLA must thus be read to "give effect to all of its provisions." PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 17 (1st Cir. 2010).

In PowerShare, the First Circuit Court of Appeals ("First Circuit") interpreted the following paragraph of an agreement between the parties by giving effect to the second sentence:

> All . . . claims . . . arising out of . . . this
> Agreement . . . shall be resolved amicably between
> Syntel and PowerShare . . . .  If any such Dispute
> cannot be resolved . . ., the same shall be settled in
> accordance with the principles and procedures of the
> American Arbitration Association . . . .  Nothing in
> this clause shall prejudice Syntel or PowerShare's
> right to seek injunctive relief or any other
> equitable/legal relief or remedies available . . . .

Id.

The plaintiff in PowerShare averred that a jury trial was preserved as a "remedy" in the third sentence of that provision. The First Circuit disagreed, however, because such a reading would violate the arbitration provision in the second sentence. Id.  "Confronted with two competing interpretations" of the meaning of "remedies," the First Circuit gave preference to the interpretation that gave effect to all provisions in the paragraph. Id. at 17-18.

Similarly, here, plaintiffs' interpretation of the general cure provision does not account for the express language of § 4.B.ii, which gives Pan Am the right to terminate the Agreement on 30-days' notice or to allow MPI to cure if it fails to meet the minimum performance requirement.  As defendants contend, plaintiffs' reading renders § 4.B.ii superfluous.

Accordingly, the 2007 MLA as a whole is subject to only one interpretation:  failure to meet the performance requirement does not guarantee a right to cure. See id. at 18.

Plaintiffs further submit that even if the contract is unambiguous, defendant is estopped from re-litigating the issue of whether a failure to reach the minimum performance requirement is curable.

For collateral estoppel to apply, an issue must have been decided by a "valid and final judgment." Kowalski v. Gagne, 914 F.2d 299, 302 (1st Cir. 1990).  Plaintiffs rely on defendant's motion for summary judgment in Pan American World Airways, Inc. v. Vetements, Inc., No. 08 Civ. 5480 (S.D.N.Y. 2008) to support their argument.  The court denied Pan Am's motion in that case, however, and thus the issue was not decided by a valid and final judgment. De-Jesus-Rivera v. Abbott Labs., No. 10-1144, 2011 WL 2669080, at *2 n.3 (D.P.R. July 6, 2011).  Therefore, collateral estoppel does not apply to the issue of whether the 2007 MLA

gives plaintiffs the right to cure a failure to meet the minimum performance requirement.

### c.  Notice of termination

Finally, plaintiffs contend that defendant breached the Agreement when it refused to provide Chiu with personal notice of the termination.  Defendant responds that it mailed the notice of termination to MPI pursuant to § 9 of the Agreement and thus fulfilled its contractual obligation.

Parties may specify the manner in which notice is to be given in the terms of the contract. Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 21 (1st Cir.1999).  Section 9 of the 2007 MLA provides that notice be given in writing "to the other designated party at its above stated address."  The other designated party in this instance is MPI and its address is listed in the contract.  It is undisputed that defendant sent notice to MPI at its listed address.  Thus, it has not breached the contract for failing to provide Chiu personally with notice of the termination.

Because there are no genuine issues of material fact with respect to plaintiffs' breach of contract claims, the Court will allow summary judgment in favor of defendant on Count I.

### 2.   Count II:  Breach of the Covenant of Good Faith and Fair Dealing

In Count II, plaintiffs claim that defendant breached the covenant of good faith and fair dealing because defendant: 1) failed to provide plaintiffs an opportunity to cure, 2) failed to provide a 12-month Royalty Year, 3) failed to notify Chiu personally of the termination, 4) failed to deliver on a promise that Japan would be covered in the geographic area of the license and 5) claimed that Chiu had no ownership stake in MPI.  The Court will, for the following reasons, allow defendant's motion for summary judgment with respect to Count II.

### a.   Claims with respect to the termination of the 2007 MLA

Plaintiffs' first three arguments reiterate those asserted with respect to the breach of contract claim.  Those allegations fail to support a claim for breach of covenant of good faith and fair dealing ("the covenant").

Under Massachusetts law, every contract is subject to an implied covenant of good faith and fair dealing. FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009). Although the covenant protects the parties' expectations of the contract, it does not create rights or duties beyond the four corners of the contract. Id.

As discussed above, the contract specified the "Royalty Year," terms of cure and the notice requirements.  Plaintiffs cannot now invoke the covenant to read in additional terms. Therefore, plaintiffs' allegations with respect to the termination of the 2007 MLA do not establish a breach of the covenant of good faith and fair dealing. See id. at 100-01.

### b. Claim with respect to the geographic area of the Agreement

Next, plaintiffs allege that defendant breached the covenant by failing to deliver on a promise that Japan would be included within the geographic area of the license.  Defendants respond that the 2007 MLA granted MPI the exclusive right to use the Pan Am trademarks in Japan, but only to the extent Pan Am owned such trademarks.

Although defendant's purported lack of due diligence in first determining whether it owned trademark rights in Japan is disconcerting, there is no evidence that defendant acted with an improper purpose.  Chiu admitted in his deposition that MPI's failure to succeed in Japan was at least partially due to his own mistakes.  The record also shows that Pan Am did not become aware of issues with its trademark rights in Japan until September, 2007, five months after the Agreement was signed. Therefore, plaintiffs have not shown that defendant acted in bad faith or with a lack of good faith in purporting to grant them

trademark rights in Japan.  <u>See</u> <u>Young</u> v. <u>Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 238-39 (1st Cir. 2013) (defendant's careless conduct was "troubling" but not sufficient to support a claim for breach of the covenant).

### c.   Claim with respect to Chiu's ownership of MPI

Finally, plaintiffs claim that defendant breached the covenant by refusing to acknowledge that Chiu had an ownership stake in MPI.  Because the covenant cannot supersede the express terms of a contract, however, the fact that defendant did not acknowledge Chiu's ownership in MPI is irrelevant, regardless of defendant's motives.  Defendant was within its contractual rights to terminate the Agreement without notifying Chiu and without providing Chiu an opportunity to cure.  <u>See</u> <u>Dunkin'</u> <u>Donuts Inc.</u> v. <u>Gav-Stra Donuts, Inc.</u>, 139 F. Supp. 2d 147, 156 (D. Mass. 2001).  Plaintiffs thus have not established a claim for breach of the covenant of good faith and fair dealing on that ground.

### 3.   Count III:  Fraudulent Misrepresentation

Plaintiffs claim fraudulent misrepresentation in Count III, alleging that defendant misrepresented that it had exclusive rights to market and sell Pan Am-branded products in Japan and then acted to exclude Chiu from the Pan Am venture.

To succeed on a claim for fraudulent misrepresentation, plaintiffs must show that:  1) defendant knowingly made a false representation to induce plaintiffs to act to their detriment and 2) plaintiffs reasonably relied on the false representation. FAMM Steel, 571 F.3d at 105-06.

With respect to the latter element, plaintiffs have failed to show that they reasonably relied on a false representation. Reliance on alleged misrepresentations that contradict the terms of a contract is unreasonable as a matter of law. HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 571 (1st Cir. 2014).

Plaintiffs specifically allege that defendant falsely stated that Japan was "covered" and would be "no problem" even though defendant knew, or was at least reckless in failing to discover, that it had no trademark rights in Japan.  Plaintiffs cannot avoid summary judgment on this count, however, because § 12 of the 2007 MLA specifically provides that defendant:

> makes no representations or warranties concerning its ownership of copyrights . . . nor with respect to the Trademarks, other than that . . . it owns the trademark registrations listed in Exhibit A to this agreement.

Exhibit A does not list any trademark registrations. Therefore, even assuming that defendant orally represented that it had trademark rights in Japan, plaintiffs could not have reasonably relied on such statements because the 2007

MLA provides otherwise. See HSBC Realty, 745 F.3d at 571-74.

### b.   Actions with respect to Chiu

Defendant's motion on Count III is unopposed with respect to plaintiffs' contention that defendant worked to exclude Chiu from the Pan Am licensing venture.  Although the Court considers the motion on its merits, Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006), a lack of opposition is often "fatal." Perez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531, 534 (1st Cir. 2006).

To the extent Count III is asserted against Lucas, the Court will allow summary judgment because plaintiffs have voluntarily dismissed Lucas from the case.

Moreover, to the extent plaintiffs allege common law fraud against Pan Am for its conduct with respect to Chiu, the Court will also allow summary judgment in favor of defendant.

First, plaintiffs claim Pan Am falsified corporate documents for MPI.  Even viewing the record in a light most favorable to plaintiffs, there is no evidence that defendant took such actions.  Such "unsupported speculation" will not negate summary judgment. Nieves-Romero *v.* United States, 715 F.3d 375, 378 (1st Cir.2013) (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir.2001)).

Next, plaintiffs assert that defendant fraudulently withheld the notice of termination.  As discussed above, however, defendant properly complied with § 9 of 2007 MLA in notifying MPI of its intention to terminate the contract.

Plaintiffs also submit that defendant was fraudulent in withholding information about its trademark rights in Japan. Plaintiffs could not, however, reasonably rely on any such purported fraud because of specific terms of the contract.  See HSBC Reality Credit Corp., 745 F.3d at 571-74.

Finally, plaintiffs contend Pan Am fraudulently withheld information about its plan to form a new venture with Lucas.

To establish a claim for fraud based on a failure to disclose, a plaintiff must show that the defendant had a duty to disclose. In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig., 618 F. Supp. 2d 96, 109 (D. Mass. 2009).

Plaintiffs have not alleged that Pan Am had any duty to disclose to them a plan to form a new company with Lucas.  Thus, plaintiffs cannot survive a motion for summary judgment.  See Schneider v. Harrison Elec. Workers Tr. Fund, 382 F. Supp. 2d 261, 264 (D. Mass. 2005) (concluding that summary judgment is appropriate when plaintiff did not allege facts that would constitute a cause of action).

Because there are no genuine issues of material fact with respect to plaintiffs' claims for fraudulent misrepresentation,

the Court will allow defendant's motion for summary judgment on Count III.

### 4.    Counts IV and V:  Claims Against Lucas

As noted above, plaintiffs originally stated claims against defendant Anthony Lucas for breach of fiduciary duty (Count IV) and tortious interference with contractual relations (Count V). Because plaintiffs have voluntarily dismissed Lucas as a party to this action, defendant's motion for summary judgment with respect to Counts IV and V will be denied as moot.

### ORDER

For the forgoing reasons, the motion of defendant Pan American World Airways, Inc. for summary judgment (Docket No. 92) is, with respect to Counts I, II and III, **ALLOWED**, but is, with respect to Counts IV and V, **DENIED** as moot because the action against Anthony Lucas has previously been dismissed.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated December 15, 2016